Argued 8 October, decided 26 October, 1903.

## SILVERFIELD v. FRANK.

[73 Pac. 1032.]

CONSTRUCTION OF CONTRACT—INTENTION OF PARTIES.

Plaintiff having purchased land adjoining defendant's house, and being about to erect houses thereon, defendant threatened to erect a high fence, and their difficulties resulted in a contract whereby plaintiff sold defendant a strip of land lying next to that of defendant, and it was agreed that no house should be erected on the strip, and that no fence, other than a wire or iron one six feet high, should be erected "on the north line of the strip." Subsequently defendant undertook to erect on the strip, but not on the boundary line, a high board fence which was to be painted black. *Held*, that the erection of such fence would be enjoined, as within the meaning of the contract.

From Multnomah: JOHN B. CLELAND, Judge.

This is a suit by Saul Silverfield against Sigmund Frank to enjoin the violation of a written agreement concerning the use of real estate, and to compel the defendant to remove a certain fence or structure from the premises. The facts concerning the execution of the agreement are as follows: The defendant is the owner of lots 5 and 6, in block 265, in the City of Portland, upon which is located his dwelling house, the north side of which is within four feet of his north line. Some time prior to the execution of the contract the plaintiff purchased and acquired title to the west half of lots 7 and 8, adjoining defendant's property on the north, and had contracted for, and was proceeding to erect thereon, three houses or flats, which would cover practically all of his property, and thus interfere with the light and air to the defendant's dwelling, and otherwise impair the enjoyment thereof. The defendant, after some unsuccessful efforts to purchase the plaintiff's property, acquired an option on the east half of lots 7 and 8, and then threatened, if the plaintiff proceeded with the construction of his buildings, to acquire the title to such property, and erect along the south and east sides of plaintiff's property a solid board fence forty feet high, which would have shut out the light and air and otherwise injured and

damaged the plaintiff. After some negotiations between the parties, and as a settlement of their controversy, they entered into the following written agreement:

"Portland, Oregon, November, 25, 1902.

We hereby agree to sell to S. Frank the south twenty feet of lot seven (7), in block two hundred and sixty-five (265), in the City of Portland, Oregon, for the sum of two thousand five hundred and seventy-five dollars ($2,575.00). The agreement shall be void if said Silverfield shall be unable to purchase the east half of said lots for the sum of ($3,500.00) within three days from the date hereof, and provided the contractors will consent to modification of their contracts as they now offer to do as to construction of two instead of three houses on said property. No house shall be erected on said south twenty feet, and no fence, other than a wire or iron fence, six feet high, shall be erected on the north line of said south twenty feet during the ownership of said north eighty feet of said lots by said Silverfield. Said S. Frank shall purchase and pay for said twenty feet the said sum of twenty-five hundred and seventy-five dollars ($2,575.00) within three days from this date and hereby agrees to do so. Silverfield agrees to fill or cause to be filled to its original level, said twenty feet agreed to be sold to said Frank.

In the presence of

| G. H. Vore, | S. SILVERFIELD, |
| Geo. W. Joseph. | S. FRANK." |

After the execution of the agreement, the plaintiff purchased the east half of lots 7 and 8, arranged with his contractors for a modification of their contracts so as to provide for the construction of two instead of three houses, deeded to the defendant the south twenty feet of lots 7 and 8, and in all other respects fully performed all the terms of the agreement on his part to be performed. He then proceeded with the erection of two houses upon his property, to cost about $14,000, when the defendant commenced to and did construct on the twenty feet conveyed to him by the plaintiff, and within about one foot of the north line thereof, a

solid board fence, eighteen feet high, and was threatening at the time of the commencement of this suit to extend its height, and to paint it on the side next the plaintiff's houses a "funeral black." The purpose of this suit is to restrain the construction of such fence, and to compel the defendant to remove so much thereof as has already been completed. Plaintiff had a decree in the court below, and the defendant appeals.          AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Geo. W. P. Joseph.*

For respondent there was a brief over the names of *O'Day & Tarpley* and *Raphael Citron,* with an oral argument by *Mr. Thos. O'Day.*

MR. JUSTICE BEAN, after stating the facts as above, delivered the opinion of the court.

The only question for decision is whether the fence or structure which the defendant was engaged in building at the time the suit was commenced was a violation of the clause in the contract between him and the plaintiff which provides : " No house shall be erected on said south twenty feet, and no fence, other than a wire or iron fence, six feet high, shall be erected on the north line of said south twenty feet during the ownership of said north eighty feet of said lots by said Silverfield." The defendant's view is that the contract does not restrict the use of the property by him, except that he shall put no house thereon, and shall build no fence on the north line except of a certain character; otherwise he may use it as he pleases, and may therefore build a high board fence or structure at any place on the property he may desire, except on the north line. The object to be accomplished in construing a contract is to arrive at the intention of the parties as expressed by the language used. When the language is ambiguous, the surrounding circumstances afford material aid to this end.

There is no room for argument as to the purpose and intent of the parties in making the contract in question. The defendant desired to prevent the construction of a building by the plaintiff so near his dwelling as to interfere with the use and enjoyment thereof by himself and family. The plaintiff's object was to avoid the construction by the defendant of a fence or structure south and east of his buildings which would interfere with the use thereof by his tenants. For these purposes only the contract was made, and, keeping this fact in view, there is no difficulty in interpreting its language, and arriving at the intention and meaning of the parties. There may be some ambiguity, and a very technical construction may support the defendant's contention, but the meaning of the contract is perfectly clear. It provides, in effect, that no house shall be erected on the twenty feet purchased by defendant, and no fence shall be built thereon except a wire or iron fence of a certain character on the north line. The manifest intention of the parties should not be avoided and their purpose thwarted by any technical construction. The fence or structure erected or purposed to be erected by the defendant is within the prohibition of the contract, and the decree is affirmed.   AFFIRMED.